# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE NO. 15-cv-21068-KING

CATHERINE DANIELS, as PR of Estate
of deceased son, LAVALL HALL; and
MELISSA EDWARDS, as natural mother
and Guardian of AARIAYAH HALL, natural
daughter of LAVALL HALL, deceased,

       Plaintiffs,

vs.

PETER EHRLICH, EDDO TRIMINO, and
CITY OF MIAMI GARDENS,

       Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendants PETER EHRLICH and

EDDO TRIMINO's Motion for Summary Judgment (DE 115) and Defendant the CITY OF

MIAMI GARDENS' Motion for Summary Judgment (DE 116), both filed May 2, 2016. The

motions are fully briefed.

### Background

Plaintiff's Second Amended Complaint pleads thirteen counts: Count I – Civil Rights

Violations Pursuant to 42 U.S.C. § 1983 against Defendant Ehrlich for Unreasonable

Seizure; Count II – Civil Rights Violation Pursuant to 42 U.S.C. § 1983 against Defendant

Trimino for Unreasonable Seizure; Count III – Civil Rights Violation Pursuant to 42 U.S.C.

§ 1983 against Defendant Ehrlich for Excessive Force; Count IV – Civil Rights Violation

Pursuant to 42 U.S.C. § 1983 against Defendant Trimino for Excessive Force; Count V –

Civil Rights Violation Pursuant to 42 U.S.C. § 1983 against Defendant Ehrlich for Failure to Intervene; Count VI – Civil Rights Violation Pursuant to 42 U.S.C. § 1983 against Defendant Trimino for Failure to Intervene; Count VII – *Monell* Claim Pursuant to 42 U.S.C. § 1983 against Defendant City of Miami Gardens; Count VIII – Civil Rights Violation Pursuant to 42 U.S.C. § 1983 against Defendants Trimino and Ehrlich for Denial of Medical Care; Count IX – Wrongful Death against Defendant Ehrlich; Count X – Wrongful Death against Defendant Trimino; Count XI – Assault and Battery against Defendant City of Miami Gardens; Count XII – Negligent Hiring, Retention and/or Supervision against Defendant City of Miami Gardens; Count XIII – Negligence/Wrongful Death against Defendant City of Miami Gardens.

The relevant undisputed material facts are as follows.[1] On February 15, 2015 at approximately 5:00 A.M., Plaintiff Catherine Daniels, and her wife, Marsha Brown, placed a call to the police asking for help at their house located at 19157 N.W. 3rd Avenue. *See* DE 114 at ¶ 1. The 911 dispatcher asked the caller if someone had a weapon and Brown responded with "Yeah. Yes, her son. He was in the mental hospital. He done snapped now." *Id.* at ¶ 1, n.1. She indicated to the dispatcher, "we in the bedroom, hiding." *Id.* While on the phone with the dispatcher, Marsha Brown warned Catherine Daniels, "You got to stay in here. He going to hurt you." *Id.*

Officer Ehrlich and Officer Trimino responded to a police dispatch call which indicated that the family was locked in the bedroom in fear for their life. *Id.* In emergency mode, with lights and sirens on, Ehrlich arrived at the scene first. *Id.* at ¶ 2. Trimino,

---

[1] Plaintiffs' Responses in Opposition (DE 149, 150) fail to create genuine issues of disputed material fact and fail to comply with the Local Rules. *See* S.D. Fla. Local Rule 56.1(b).

arrived as back-up, also in emergency mode. *Id.* Upon Ehrlich's arrival, Catherine Daniels, the suspect's mother, was outside and indicated that her son, Lavall Hall, had left down the street. *Id.* She pleaded with Officer Ehrlich to find him. *Id.*

Ehrlich drove down the street "very slowly" to canvas the area. *Id.* at ¶ 3. In the meantime, Officer Trimino arrived on the scene and made contact with Marsha Brown who explained that she and the subject's mother had called the police because Hall was violent, likely back on a drug called "Molly," and needed to be found. *Id.* Ehrlich drove off in search of Hall and soon located him wearing a tank-top and underwear on a cold night. *Id.* at ¶ 4. Ehrlich tried to talk to Hall calmly, saying "let's talk," but Hall walked away. *Id.* Although Ehrlich did not get very close to Hall upon initial contact, Ehrlich noticed that Hall appeared to be walking with a broom. *Id.*

Ehrlich pulled up to Trimino's police vehicle and relayed to him that Hall was walking with a broom, in his underwear, barefoot, and non-compliant. *Id.* at ¶ 5. Ehrlich drove off in search of Hall and soon located him. Ehrlich, seated in his police vehicle with the window down, attempted to talk to Hall, but Hall started to run. *Id.* at ¶ 6. Ehrlich stepped out of the car to see where Hall was going. *Id.* As Ehrlich stepped out, Hall ran behind the police cruiser to the driver's side door and began striking Ehrlich with the broomstick. *Id.* at ¶ 7. Hall hit Ehrlich with the broom five or six times on the top of the head in an overhead motion, as if chopping wood, with both hands gripping the stick. *Id.* at ¶¶ 7-8. The broom had a pointed edge, resembling a metal pointed spear, which penetrated through Ehrlich's Miami Gardens Police Department cap and caused a laceration requiring stitches. *Id.* at ¶ 8, n.5.

Officer Trimino witnessed his partner, Officer Ehrlich, being hit by Hall and accelerated and revved his vehicle to distract Hall, which caused Hall to stop and run. *Id.* at ¶ 9. Trimino gave chase in his vehicle, intending to take Hall into custody as a result of the violent battery committed on Ehrlich. *Id.* at ¶ 11. Once Trimino located Hall, Trimino exited his police vehicle. Abruptly, Hall charged and hit Trimino in an over-the-head motion using the same weapon. *Id.* The pole hit Trimino's head causing swelling and discoloration. *Id.* at ¶ 12. Trimino and Hall engaged in a brief fist fight. *Id.* Trimino was able to create enough space to remove his taser, but Hall left running before Trimino was able to deploy it. *Id.*

Trimino returned to his vehicle, quickly completing a u-turn in pursuit of Hall. *Id.* at ¶ 13. Over the radio, Trimino indicated to "hold the air" which was a call for additional back-up. Trimino was able to get close enough to Hall in his vehicle to deploy his taser through the driver's side window. *Id.* However, the taser deployment did not cause Hall to fall because the neuromuscular incapacitation did not take effect. *Id.* Instead, Hall attempted to attack Trimino with the weapon through the driver's side window. *Id.* at ¶ 14. Trimino attempted to exit the vehicle with taser in his left hand, but, as he did so, Hall hit the taser out of Trimino's hand. *Id.* at ¶ 15. Another short fight ensued. *Id.* On one of Hall's swings with the weapon, Hall missed and fell to the ground. *Id.* Officer Trimino immediately tried to handcuff Hall, but Hall was sweating profusely and soaking wet, so Hall was able to slip out of Trimino's grasp and run. *Id.*

At that moment, Ehrlich was standing mid-block (after orienting himself from the attack) and in an effort to assist Trimino, deployed his Taser in another attempt to subdue Hall, but Ehrlich's taser probes did not make contact. *Id.* at ¶ 16. Hall hit Ehrlich on his head

4

two or three more times with the broomstick. *Id.* at ¶ 17. Trimino went after Hall on foot, which caused Hall to stop attacking Ehrlich and flee. *Id.* As Trimino continued to give chase on foot, Ehrlich, having been struck on the head a second time, requested "315's" over the air. *Id.* Trimino continued to give chase and noticed that Hall was heading in the direction of Ehlrich's police cruiser, which had its door open with an AR-15 assault rifle mounted on top. *Id.* at ¶ 18.

While running after Hall, Trimino's service pistol was holstered. *Id.* at ¶ 19. Abruptly, Hall stopped, turned and violently swung the broomstick above Trimino's head. *Id.* Trimino, with his service pistol in hand, gave at least four loud verbal commands, such as "get on the ground or you're fucking dead." *Id.* at ¶ 20. Hall did not get on the ground but instead raised the broomstick, at which time Trimino discharged his service pistol while back-peddling and side-stepping. *Id.* at ¶¶ 20-21. Trimino fired five times but only two shots made contact with Hall. *Id.* at ¶ 21.

Hall landed face down in the prone position while screaming profanities. *Id.* at ¶ 22. Trimino was able to handcuff the left arm but required assistance. *Id.* Ehrlich did not see the shooting or anything in the area where the shooting took place. *Id.* at ¶ 23. Ehrlich arrived and assisted after the shooting occurred. *Id.* Ehrlich only heard the shots being fired. *Id.* When Ehrlich made his way to Hall, Hall was alive and fighting while being handcuffed. *Id.*

Within seconds of securing Hall, Trimino stated over the radio "shots fired, subject down." *Id.* at ¶ 24. Sergeant Marinella, the supervisor on shift, was the only other person to arrive on the scene immediately after Hall was shot. *Id.* At approximately 5:10 A.M., Fire Rescue was requested. DE 111-6; DE 114 at ¶ 24. Upon Miami-Dade Fire Rescue's arrival, Hall was pronounced dead. DE 114 at ¶ 25. Ehrlich and Trimino were treated for the injuries

5

they sustained. *Id.* Ehrlich was transported to Memorial Regional Hospital by Miami-Dade Fire Rescue for further medical attention. *Id.* Trimino was placed in Ehrlich's vehicle and later left the scene. *Id.*

At the time of the shooting, Marsha Brown had previously left and drove her car to a near-by gas station to pick up "Possum," Hall's uncle. *Id.* at ¶ 26. She only heard the shots fired and did not see the incident. *Id.* Officer Trimino and Officer Ehrlich left the scene and drove to Catherine Daniels' home where they found her seated outside on her porch. *Id.* Catherine Daniels also did not observe the shooting or see Officer Trimino prior to the shooting. *Id.*

Benjamin Matthis, M.D., Associate Medical Examiner for the Miami-Dade Medical Examiner Department, an independent agency, conducted the autopsy of Lavall Hall. *Id.* at ¶ 27. Dr. Matthis made autopsy findings within a reasonable degree of medical probability. *Id.* Dr. Matthis concluded that Hall's death was caused by a penetrating gunshot wound located over Hall's sternum. DE 114 at ¶ 27; DE 111-14 at 7; DE 111-16 at 1.   The bullet "obliterated" Hall's left and right ventricles. DE 111-14 at 7; DE 111-16 at 4. Dr. Matthis testified that Hall was likely to have died within seconds or minutes. DE 111-14 at 7. Dr. Matthis also found that there were marks on the right side of Hall's chest showing injury from conductive electrical weapons, such as tasers. DE 111 at ¶ 30; DE 111-14 at 9; DE 111-16 at 5.

### Standard on Motion for Summary Judgment

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477

6

U.S. 317, 322 (1986). A fact is "material" if it is may determine the outcome under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must show specific facts to support that there is a genuine dispute. *Id.* at 256. On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *Id.* at 255. In reviewing the record evidence, the Court may not undertake the jury's function of weighing the evidence or undertaking credibility determinations. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010).

**I.     Whether Trimino and Ehrlich are Entitled to Qualified Immunity**

Defendants Trimino and Ehrlich assert that they are entitled to qualified immunity from Plaintiffs' § 1983 claims. *Salgado v. City of W. Miami*, 85 F. Supp. 3d 1332, 1337 (S.D. Fla. 2015). Plaintiffs contend that the force Trimino and Ehrlich used was excessive under the Fourth Amendment, "which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Id.* at 396. Rather, it "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). It "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Garner*, 471 U.S. at 8–9).

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d, at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396–97. The inquiry "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

A. <u>Defendant Peter Ehrlich</u>

The undisputed facts show that Ehrlich's use of force was objectively reasonable. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. The undisputed facts show that Ehrlich only used force against Hall when he deployed and discharged his taser after having been repeatedly struck in the head. This action was clearly reasonable. *See, e.g., Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (concluding that the single use of a taser against a "hostile, belligerent, and uncooperative" suspect did not constitute excessive force).[2]

---

[2] For the same reasons, the undisputed facts show that, under Florida's Wrongful Death Act, Ehrlich did not "act[] in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Therefore, Ehrlich is entitled to summary judgment on Count IX of Plaintiffs' Second Amended Complaint.

The undisputed facts show that Ehrlich did not deny medical care. Deliberate indifference to serious medical needs may be shown by failure to provide prompt attention to those needs by delaying necessary medical treatment for nonmedical reasons. *Thomas v. Town of Davie*, 847 F.2d 771, 772–73 (11th Cir. 1988). Here, the undisputed material facts show that, within seconds of securing Hall, Trimino indicated over the radio "shots fired, subject down." At approximately 5:10 A.M., Fire Rescue was requested. Upon Miami-Dade Fire Rescue's arrival, Hall was pronounced dead.[3] Medical treatment was not delayed.

Finally, the undisputed facts show that Ehrlich did not fail to intervene. It is clear that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) (quoting *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir.1986)). For the reasons provided in the following section, no constitutional violation required Ehrlich's intervention. The force used by Officer Trimino was objectively reasonable under the circumstances.[4]

## B. <u>Defendant Eddo Trimino</u>

### 1. <u>No Constitutional Violation</u>

It is clear that Trimino is entitled to judgment as a matter of law as to the alleged section 1982 violations. First, this Court considers the alleged use of force violations. The facts of this case bring into sharp relief *Graham*'s command that "[t]he calculus of

---

[3] In any event, Dr. Matthis, Medical Examiner for the Miami-Dade Medical Examiner Department, testified that both ventricles were obliterated by the bullet and that Hall would have died within seconds or minutes.

[4] Even if it were not, Ehrlich would not be liable for failure to intervene because Ehrlich had no opportunity to do so, arriving only after shots were fired.

reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." 490 U.S. at 396–97. Although Trimino's decision to fire his weapon risked Hall's death, that decision was not outside the range of reasonableness in the light of the potential danger posed to the officers and the public. "[U]nder the law, the threat of danger to be assessed is not just the threat to officers at the moment, but also to the officers and other persons if the chase went on." *Pace v. Capobianco*, 283 F.3d 1275, 1280 n. 12 (11th Cir. 2002). "[T]he question then is whether, given the circumstances, [Hall] would have appeared to reasonable police officers to have been gravely dangerous." *Id.* at 1281. "Considering the circumstances surrounding the shooting, including the threat posed by [Hall's] condition and behavior, this question must be answered 'yes.'" *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007). A jagged piece of wood swung at the head can cause death or serious bodily harm. In addition, as in *Long*, there was the prospect that Hall might commandeer Ehrlich's cruiser or gain access to Ehrlich's AR-15, a circumstance with the potential for disaster. After, carefully balancing Hall's Fourth Amendment interests against the countervailing governmental interest in securing the safety of the police officers and the public, it is clear that, in this case, the use of deadly force was objectively reasonable.[5]

---

[5] For the same reasons, the undisputed facts show that, under Florida's Wrongful Death Act, Trimino did not "act[] in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Therefore, Trimino is entitled to summary judgment on Count IX of Plaintiffs' Second Amended Complaint.

10

2.  The "Clearly Established" Inquiry

Even if facts existed to support the finding of a constitutional violation, which they do not, Trimino is entitled to qualified immunity because his conduct did not violate clearly established law. *Id.* at 201. The "salient question" to ask in the "clearly established" inquiry is whether the state of the law at the time of the incident gave "fair warning" that the alleged conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "'[F]air and clear warning'" provided by prior caselaw is "sufficient to preclude the defense of qualified immunity at the summary judgment stage." *Id.* at 746. For law to be "clearly established," the facts of previous cases do not need to be "'materially similar'" to those at issue in the case before it. *Id.* at 741. *See also id.* at 742 (disapproving of a "rigid, overreliance on factual similarity"). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* at 741.   There is no clearly established law that would have put Officer Trimino on notice that the force used was unconstitutional.

3.  No Failure to Intervene or Denial of Medical Care

For the reasons already stated, no constitutional violation occurred and there was no duty to intervene. Likewise, there is no liability for withheld medical care because medical care was provided promptly.

C. **Defendant City of Miami Gardens**

Plaintiffs' claims against Officers Trimino and Ehrlich are without merit. Accordingly, Plaintiff's claims against the City of Miami Gardens, the allegedly vicariously liable employer, cannot stand.

**Conclusion**

Therefore, it is **ORDERED, ADJUDGED, and DECREED** as follows:

11

1. Defendants Eddo Trimino and Peter Ehrlich's Motion for Summary Judgment **(DE 115)** and Defendant the City of Miami Garden's Motion for Summary Judgment **(DE 116)** be, and the same are, hereby **GRANTED**.

2. All pending motions are **DENIED as moot**.

3. The Clerk of Court shall **CLOSE** this case.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 18th day of August, 2016.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:    All Counsel of Record

12